Will Case.                    **Brown's Will.**

Case 18.           Error to the Livingston County Court.

          *Wills, cancellation of.    Re-publication of wills.*

October 26.    Chief Justice Robertson delivered the Opinion of the Court.

The case stated.    Gustavus A. Brown, of Smithland, Kentucky, having, on the 10th of December, 1835, written and published his last will, in the first clause of which he emancipated his slaves, afterwards, in the presence of a credible witness, carefully cut off so much of the paper as contained the other and succeeding devises or legacies, declaring at the time, that his purpose was to make another will at some future day respecting all his other estate, but that, lest some accident might defeat his his intention to manumit his slaves, he had left unmutilated and intended to preserve the provision on that subject, which so far was and should *remain* his last will.

The will had been written on the first page of an entire sheet of paper, and did not contain the testator's name in the body of it, though probably he had subscribed it at the bottom.    But on the back of the first page and opposite to the emancipating clause, he had made, in his own writing, the following endorsement: "The within written "instrument, declared by Gustavus A. Brown to be his "will and in his own hand writing, this 10th day of De-"cember, 1835, in our presence; said Brown at the same "time, requested us to attest his said declaration and ac-"knowledgment;" attested by three names written by the witnesses respectively, and on the back of the entire sheet, folded and sealed in the form of a letter, "the will of Gustavus A. Brown," was superscribed by himself. In this condition the paper, after the above described mutilation, was deposited in his desk.    In a few days Brown was killed before he had made any other will.

The paper, as thus appearing, on presentation for probate as the will of Gustavus A. Brown, was rejected by the County Court of Livingston; and the question now

to be revised and decided finally by this Court is, whether, upon the facts just stated, that paper should be deemed the valid last will of the said Brown.

The obliteration or cancellation of a portion of a testamentary paper, by the testator himself, is admitted to be an equivocal act, the legal effect of which generally depends on extrinsic proof of the accompanying circumstances indicating the intention, and therefore, although the *prima facie* import of an act of cancellation may be that it was done *animo revocandi,* yet that presumption may be repelled by parol proof of facts showing that the *animus cancellendi* applied only to so much as had been actually cancelled: *Williams on Executors,* 1st Vol. page 66, *and the cases there cited.*

It is evident, therefore, that the cancellation in this case, could not be deemed a revocation of the emancipating devise, had the testator's name, if ever subscribed, remained on the paper as originally written, or had it been written, as is usual, in the caption of the testament itself so as to have left entire such a memorial in writing as is required by our statute for passing land or slaves by last will. But, as no testamentary document without the testator's signature can have the legal effect of emancipating his slaves, the cancellation in this case necessarily operated as a legal revocation of the entire will, unless there shall have remained such a signature of the testator's name as the statute of wills requires.

But, as decided in this Court in the case of Miles' will, 4 *Dana,* 1, the testator's name, written by himself, anywhere on the testamentary paper, in connection with the testament, will be a sufficient signature whenever it appears that at the time of publication, there was no intention to subscribe the name or sign it otherwise than already so signed.

The cancellation or cutting off a portion of the devises in a will, leaving the testators signature at the conclusion, or in the body, when no other signing had been intended, with a declaration that the intention was to annul only what was so cancelled; the rusidue is not effected; but remains a valid will.

If then Brown's name was never subscribed or otherwise signed by himself than as endorsed on the paper, there should be no doubt that the original will thus published by him as his last will, was valid without any other signature, and being once a legal testament, so much as yet remains must be equally as valid as it ever was, because

there can be no doubt that the cancellation was not an intentional revocation of what remains.

And though, as already suggested, it may be probable that when the entire will was published, Brown's name was subscribed at the bottom, nevertheless, it seems to us that either the cancellation did not revoke the whole will, or if it did for an instant have such a technical effect, still there was a constructive and sufficient re-publication; for, not doubting that had the paper been originally published precisely in its present form, it would have been good according to the statute, we cannot resist the deduction that the circumstances accompanying the cancellation sufficiently manifested a re-publication of the paper in its mutilated shape, as the consummated last will of the testator so far as his slaves might be concerned. His name being, therefore, signed by himself on the paper, and in reference to the testamentary disposition, we are of the opinion that what remains is a good will.

Wherefore, it is our opinion that the County Court erred in rejecting the paper, and therefore, the order of rejection is set aside, the controverted paper ordered to record in this Court, and the case remanded with instructions to admit it, with its endorsements, to record in the County Court of Livingston, as the last will of Gustavus A. Brown, deceased.

*C. S. Morehead* for will; *Owsley and Dana contra.*