IN THE MATTER OF THE PROBATE OF THE WILL OF
BERNARD NASSANO, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted February 19, 1985—Decided March 8, 1985.

Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.

*Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys for appellants (*Timothy G. Farrell,* on the brief).

*Sterns, Herbert & Weinroth,* attorneys for respondents Carmella Huste, Ida Dounton and Lora Cockburn (*Lawrence F. Gilman,* on the brief).

*Irwin I. Kimmelman,* Attorney General, attorney for respondent State of New Jersey (*James J. Ciancia,* Assistant Attorney General, of counsel; *Robert P. Krenkowitz,* on the brief).

The opinion of the court was delivered by

GREENBERG, P.J.A.D.

This matter comes on before this court on appeal from a judgment of the Probate Part of the Superior Court, Law Division, denying the admission of a will to probate.

The decedent, Bernard Nassano, was never married and had no children. On November 10, 1978, he executed an original and one copy of a will designating certain charitable organizations and individuals, none of whom was related to him, as beneficiaries. The will was prepared by an attorney who was named as co-executor. The original will was retained by the attorney but Nassano kept a fully executed duplicate.

Subsequently Nassano inscribed the following handwritten words below the signature line on the duplicate of the will. "This *Will*, and *all* other *Wills* Made by me are *Null* and *Void* Signed by me this Seventh Day of June 1979 Bernard Nassano June–7–1979 *BN BN.*" On the backer of the duplicate copy decedent wrote "This *Will* and all other *Wills* (Made By Me) are *Null* & Void Bernard Nassano June–7–1979 BN." While there is no evidence as to when Nassano wrote this additional language there is no reason to believe that it was not on June 7, 1979.

Nassano died on August 18, 1982 without having executed any further will. Subsequently the November 10, 1978 duplicate copy of the will with decedent's handwritten inscription was found. On September 1, 1982 the attorney Nassano designated as co-executor filed a complaint seeking to probate the will in solemn form and obtained an order directed to the beneficiaries under the will and to certain of Nassano's relatives requiring them to show cause why the will should not be admitted to probate and letters testamentary issued to the executors. *See R.* 4:84–1(b). The relatives were named because of the possibility that Nassano died without a valid will thus giving rise to the chance of intestacy.

Subsequently the State of New Jersey was permitted to intervene as a party. The State claimed an interest in the

matter because in its view Nassano had died intestate without any relative entitled to take his property under *N.J.S.A.* 3B:5–4. Thus the State considered that Nassano's estate had escheated.

The matter of whether decedent had validly revoked his will came on before the court on cross-motions for summary judgment. After hearing arguments the motion judge delivered an oral opinion that Nassano's will had been duly executed but he had written and signed the language declaring it null and void with the intention to revoke or withdraw its force and effect. The judge held as a matter of law that Nassano's words though written on the duplicate copy revoked the will. The judge, however, made no resolution of the issues regarding possible escheat of the estate. A judgment of April 18, 1984 reflected his opinion. Certain of the beneficiaries named in the will have appealed from that judgment.

On this appeal appellants contend that respondents have the burden to show that Nassano revoked the will. Appellants assert that Nassano's writings did not revoke the will. They further contend that when Nassano wrote the words his mental capacity may have been impaired. Finally they assert that Nassano would not have intended the will to be revoked if he knew that his estate would escheat to the State.

*N.J.S.A.* 3B:3–13 provides that a will may be partially or completely revoked:

    a. By a subsequent will which revokes the former will or part expressly or by inconsistency; or

    b. By being burned, torn, canceled, obliterated, or destroyed with the intent and for the purpose of revoking by the testator or by another person in his presence and by his direction.[1]

The parties refer us to no case deciding whether a handwritten statement signed by the testator on the will declaring it null and void is a valid revocation under *N.J.S.A.* 3B:3–13. It does

---

[1]*See* also N.J.S.A. *3A:2A–12 in effect when the decedent executed his will and attempted to revoke it. There was no change in the section when N.J.S.A. 3A:2A–12 was replaced by N.J.S.A. 3B:3–13.*

appear that prior to the revisions of *Title* 3A by *L.*1977, *c.* 412, effective to any wills of decedents dying on or after September 1, 1978 (*L.*1979, *c.* 221, § 13) and constituting *Title* 3A, *c.* 2A, such a statement would not have revoked the will. *See In re Parker,* 47 *N.J.Super.* 241, 244 (App.Div.1957), aff'd o.b. 26 *N.J.* 352 (1958); *In re Danielly,* 14 *N.J.Super.* 238, 240–241 (Cty.Ct.1951). This result would have been reached because prior to September 1, 1978 holographic wills were with limited exceptions not valid in New Jersey. *See N.J.S.A.* 3A:3–2; *N.J.S.A.* 3A:3–5. Further a writing revoking a will had to be a valid will or codicil or at least be executed in the manner that a will was required by law to be executed. *N.J.S.A.* 3A:3–3. Consequently if an unattested writing could have revoked a will it would have been given the same effect as though it had been properly attested. *See In re Danielly, supra,* 14 *N.J.Super.* at 241. However by *L.*1977, *c.* 412, § 5, *N.J.S.A.* 3A:2A–5, now *N.J.S.A.* 3B:3–3, a holographic will, whether or not witnessed, is valid provided the signature and material provisions are in the handwriting of the testator. Consequently Nassano's conduct in attempting to revoke the will was done with the same formality as is now required to execute a will.

█ In view of the substantial changes in the law effective in 1978 before the decedent's will was executed and before he attempted to revoke it we do not regard prior case law as controlling.[2] We must decide whether the decedent validly canceled the will as allowed by *N.J.S.A.* 3B:3–13 by writing the statement declaring it to be null and void. We see no reason to hold that he did not cancel the will. Firstly there can be no doubt that the words "null and void" reflected such an intent. *See In re Kehr's Estate,* 373 *Pa.* 473, 95 *A.*2d 647 (Sup.Ct.1953); *Thacker v. Klotz,* 175 *Va.* 267, 7 *S.E.*2d 883 (Sup.Ct.1940). Indeed the trial judge thought it would be "a travesty of

---

[2] Of course we are not suggesting that our results would have been different if the will had been executed before September 1, 1978. Here all events took place after that time. *See N.J.S.A.* 3A:2A–85.

justice" not to hold the will revoked and we agree. Secondly *N.J.S.A.* 3B:3–13 does not indicate how a will is to be canceled. While at one time cancellation required some obliteration or crossing-out of clauses in the will, *see In re Parker, supra,* 47 *N.J.Super.* at 245 we think it would be extraordinary to continue such a requirement at a time when holographic wills are valid and the testator uses a method to cancel the will which could have been used for a valid holographic will. We can perceive of no reason why the Legislature would insist on more formality in the cancellation of a will than in its execution.

In fact in the circumstances confronting him Nassano used an appropriate method to cancel his will. As we indicated the original will was not in his possession. If he had destroyed the copy with the intent to revoke it he would have revoked the will. *See In re D'Agostino,* 9 *N.J.Super.* 230, 232 (App.Div. 1950). Yet if the destroyed copy had not been found the decedent's intent might have never been discovered. It may well have been that the original will would have been probated. By retaining the copy of the will with the language of cancellation on it evidence of Nassano's intent was preserved.[3] We decline to construe *N.J.S.A.* 3B:3–13 to require that we dishonor Nassano's intent.

We add a caveat to our opinion. We are simply ruling that in the circumstances of this case Nassano unambiguously expressed his intent and did so with sufficient formality that it may be honored. In some other case a testator's writings on a will might not be so clearly or formally expressed and thus could not be given effect.

We see no merit to appellants' other contentions. We find nothing in the record on which a finding could have been reached that by reason of lack of capacity Nassano could not have revoked his will. Thus the presumption of testamentary

---

[3] Of course if the same language had been written and signed on the original will if only one had been executed we would have reached the same result.

capacity has not been overcome. *In re Estate of Coffin*, 103 *N.J.Super.* 1, 3 (App.Div.1968). Finally we see no reason to hold that Nassano would not have intended to revoke his will had he expected his estate to escheat. We do not know why Nassano revoked the will. Perhaps he intended to make a new will. In any event nothing in the record suggests that Nassano's act of revocation was subject to any condition or understanding as to what would be the further consequences of the revocation. Thus even if Nassano's estate escheats to the State his will has been revoked.

The judgment of April 18, 1984 is affirmed.